IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA MONIQUE JUSTIN, individually, as successor to ANDRE MAURICE BROWN, et al.,<br><br>Plaintiff(s),<br><br>vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendant(s). | No. C 05-4812 MEJ<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment, filed September 13, 2007. (Doc. #31.) For the following reasons, the Court **GRANTS** Defendants' motion.

## II.   BACKGROUND

**A.   Factual Background**

On November 23, 2004, San Francisco Police Officers ("Officers") detained and arrested Andre Brown on drug charges. (Compl., ¶ 10; Opp'n at 2:21-23; Joint Statement of Undisputed Facts ("JSU") #5.) As the Officers approached Mr. Brown, he ran away and swallowed a bag containing 16 smaller bags of various drugs, including cocaine. (Melinek Decl., Ex. C; Opp'n at 2:8-8.) There is some dispute as to the events that followed. Under Plaintiffs' version, four to six Officers subdued Mr. Brown, one of whom struck Mr. Brown repeatedly with a baton. Mr. Brown did not strike at any of the Officers. (Opp'n at 2:13-20.) Under Defendants' version, Mr. Brown actively resisted arrest - he kicked and struck at the officers, ripped an Officer's uniform, and broke another's radio. As additional Officers arrived on scene, and Mr. Brown continued to resist and kick

1  at Officers, a sergeant used his baton to strike his upper torso twice to gain compliance, and another
2  officer put leg restraints on him. (Melinek Decl., Ex. C.)

3  At some point, Mr. Brown became unresponsive, and Officers called for medical assistance.
4  The parties also dispute the facts here - Plaintiffs state that the delay in medical assistance was
5  unreasonably slow; Defendants state that paramedics arrived within five minutes and tried to
6  resuscitate Mr. Brown. (Opp'n at 2:22-24; Melinek Decl., Ex. C.) As the paramedics were
7  preparing to transport Mr. Brown to the hospital, a medic attempted to insert a breathing tube and
8  found his air passage blocked by the bag of drugs. (Opp'n at 2:25-26; Melinek Decl., Ex. C.) The
9  medic removed the bag with forceps, but the paramedics were unable to resuscitate Mr. Brown, who
10 was pronounced dead after arriving at the hospital. (Melinek Decl., Ex. C.) An autopsy revealed his
11 cause of death as sudden respiratory arrest due to mechanical asphyxia. (Melinek Decl., Ex. C;
12 Opp'n at 2:27-28.) At the time of the incident, the Officers were acting under color of law and in the
13 course and scope of their employment with the San Francisco Police Department, (JSU #6), and the
14 paramedics were rendering emergency medical services in the course and scope of their employment
15 with the San Francisco Fire Department (JSU #4).

16 Plaintiff Lisa Monique Justin is a successor in interest to the Estate of Andre Brown.
17 Plaintiff Val Lajune Brown was Mr. Brown's mother.[1] On May 5, 2005, Ms. Brown and Ms. Justin
18 filed government tort claims, on behalf of the Estate of Andre Brown and Val LaJune Brown,
19 against the City and County of San Francisco (the "City"). (Opp'n at 3:1-3.) The government tort
20 claim filed on behalf of the Estate of Andre Brown states the basis for the claims as follows: "This
21 claim is based on the wrongful death of Andre Brown on 11/23/04 as a result of the intentional and
22 negligent conduct of officers of the San Francisco Police Department and emergency medical
23 personnel. . . . Deprivation of liberty, pain and suffering, and wrongful death as a result of excessive

---

[1] On September 12, 2007, Plaintiffs filed a Notice of Dismissal of Action by Individual Plaintiffs, dismissing the claims of Sonya Justin, Lynette Richie, and Kimberly Justin in their entirety, and the claims of Lisa Monique Justin in her individual capacity. (Doc. #25.) Accordingly, the ony claims that remain are those of Lisa Monique Justin on behalf of the Estate of Andre Brown, and those of Val Lajune Brown.

2

force and untimely and inadequate medical attention. Loss of companionship and support." (JSU #7.) The government tort claim filed on behalf of Val Lajune Brown states the basis for her claim as follows: "This claim is based on the wrongful death of Andre Brown on 11/23/04 as a result of the intentional and negligent conduct of officers of the San Francisco Police Department and emergency medical personnel. ... Deprivation of liberty, pain and suffering, and wrongful death as a result of excessive force and untimely and inadequate medical attention. Loss of companionship and support." (JSU #8.)

**B.     Procedural Background**

Given the nature of the procedural background in this matter, the Court finds a detailed review appropriate. Plaintiffs filed this action on November 23, 2005, alleging federal civil rights violations under 42 U.S.C. § 1983, as well as state law causes of action for assault and battery, wrongful death, intentional and negligent infliction of emotional distress, and negligent selection, training, and supervision of police and medical personnel. (Doc. #1.)

On June 16, 2006, the parties submitted a Joint Case Management Statement, in which Defendants identified the names of the officers and paramedics who were involved in the incident, and what role they played in the incident. (Doc. #10.) After review of the parties' statement, the Court issued a Case Management Order which set the following pertinent deadlines:

| | |
|---|---|
| Fact Discovery Cut-off | February 23, 2007 |
| Expert Disclosure | February 23, 2007 |
| Rebuttal Experts | March 9, 2007 |
| Summary Judgment filing deadline | March 22, 2007 |
| Expert Discovery Cut-off | April 26, 2007 |
| Trial | August 27, 2007 |

On September 14, 2006, Plaintiffs associated attorney Matt Kumin into the case. (Doc. #12.)

On March 5, 2007, the parties filed two joint letters with the Court regarding certain discovery disputes. (Doc. ## 15, 16.) In the letters, Plaintiffs' counsel, Randall Knox, informed the Court of a trial in the San Francisco Superior Court, to which he was assigned. Based on Mr. Knox's involvement in the trial, the Court asked the parties to indicate whether the dispositive motion cut-off date, pretrial dates, and trial date would need to be moved. (Doc. #19.) The parties' status report

3

indicated that the continuance was necessary because Mr. Knox would be "solely responsible" for opposing Defendants' anticipated summary judgment motion.[2] (Doc. #20.) Based on the parties' report, the Court granted a continuance of nearly six months and established the following revised schedule:

| | |
|---|---|
| Summary Judgment Filing Deadline: | September 13, 2007 |
| Opposition Deadline | September 27, 2007 |
| Trial | February 19, 2008 |

(Doc. #22.) As the discovery and expert deadlines had already passed, and neither party requested a continuance of these dates, the Court did not continue the discovery and expert deadlines.

On September 12, 2007, Plaintiffs dismissed Sonya Justin, Lynette Richie, and Kimberly Justin based on their lack of standing, and dismissed Lisa Monique Justin in her individual capacity. (Doc. #25.)

On September 13, 2007, Defendants filed the present motion. (Doc. #31.) Although Plaintiffs' opposition was due on September 27, 2007, they failed to file an opposition or request for continuance. Accordingly, the Court issued an Order to Show Cause on October 3, 2007, and vacated the hearing on Defendants' motion. (Doc. #33.) Mr. Knox filed a response to the OSC on October 11, 2007, requesting thirty days to find additional counsel to assist in opposing the pending motion. (Doc. #34.) In his response, Mr. Knox stated that Matt Kumin had advised him that he "would no longer participate in the case." (Doc. #34, ¶ 4.) On October 16, 2007, the Court vacated the OSC and continued the deadline for filing an opposition to November 15, 2007. (Doc. #35.)

On November 26, 2007, based on Plaintiffs failure to file an opposition or request for continuance in compliance with the October 16 Order, the Court vacated all pending pretrial and trial dates, and granted Plaintiffs a "final opportunity to file an opposition" by December 13, 2007. (Doc. #36.) In its order, the Court noted the following: "As this is the third opportunity to file an opposition, any failure to comply with this deadline shall result in dismissal of this case for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41." (Doc. #36)

---

[2]The statement made no mention of Matt Kumin's lack of involvement.

4

On December 13, 2007, rather than filing an opposition, Plaintiffs filed a motion seeking an extension of all the deadlines in this case, including discovery deadlines which had already expired. Plaintiffs also sought leave to file an amended complaint. (Doc. #40.) On February 25, 2008, the Court held a hearing on the matter. Upon consideration of the parties' arguments, the Court denied Plaintiffs' motion. (Doc #50.) First, based on Plaintiffs' counsel's lack of diligence, the Court found that Plaintiffs had not established good cause for an extension of the discovery and expert designation deadlines. (Doc. #50 at 4:25-6:23.) Second, based on Plaintiffs' undue delay, and the resulting prejudice to Defendants, the Court denied Plaintiffs leave to amend their complaint. (Doc. #50 at 6:24-8:8.) The Court rescheduled Defendants' summary judgment motion for hearing on April 24, 2008, and ordered Plaintiffs to file any opposition by March 20.

On March 20, 2008, Plaintiffs filed an Opposition. (Doc. #51.) Although the opposition references certain exhibits, there were no exhibits attached. Accordingly, the Court ordered Plaintiffs to separately file the exhibits, and permitted Defendants to file a supplemental reply upon review of the exhibits. (Doc. ##54, 55.)

On April 3, 2008, Defendants filed their Reply. (Doc. ##53, 54.)

On April 9, 2008, Plaintiffs filed their exhibits in support of the opposition.

On April 15, 2008, Defendants filed a supplemental reply.

On April 24, 2008, the Court held a hearing on the matter. Kimberly Bliss appeared on behalf of Defendants. Neither Plaintiffs nor their counsel made an appearance.

### III. DISCUSSION

In their motion, Defendants argue that they are entitled to judgment as a matter of law on each of Plaintiffs' claims because: (1) Plaintiffs do not have evidence that the City has a policy or custom that was the moving force behind any constitutional violations; (2) Plaintiff Val Lajune Brown does not have admissible evidence necessary to establish the element of causation on her wrongful death claim; (3) Plaintiff Estate of Andre Brown does not have admissible evidence necessary to establish the element of damages on the claim for assault and battery; (4) Plaintiffs do not state a claim for violation of California Civil Code § 52.1; (5) there is no statutory basis for

5

1  Plaintiffs' claim of "negligent selection, training, retention, supervision, investigation, and
2  discipline" against Defendant City; (6) Plaintiffs' claims for (I) violation of California Civil Code §
3  52.1; (ii) "negligent selection, training, retention, supervision, investigation, and discipline"; (iii)
4  negligent infliction of emotional distress; and (iv) intentional infliction of emotion distress are
5  barred because they are not contained in Plaintiffs' government tort claims; and (7) Plaintiffs cannot
6  recover punitive damages since they failed to name or serve any individual defendants and such
7  damages are barred against the City.  The Court shall address each argument in turn.

**A.     Legal Standard**

Summary judgment is proper when the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, discovery and affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 248. When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. *United States v. 1 Parcel of Real Property*, 904 F.2d 487, 492 n.3 (9th Cir. 1990) (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978).  However, the opposing party need not produce evidence

6

in a form that would be admissible at trial in order to avoid a summary judgment. *Celotex*, 477 U.S. at 324. Nor must the opposing party show that the issue will be resolved conclusively in its favor. *Liberty Lobby*, 477 U.S. at 248-49. All that is necessary is sufficient evidence supporting the asserted factual dispute and requiring a jury or judge to resolve the parties' differing versions of the truth at trial. *Id.*

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, the evidence and inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 631. However, in determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1966). A court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. *Id.*

**B.   Declaration of Christina Hamill**

As part of their opposition to Defendants' motion, Plaintiffs filed the Declaration of Randall Knox, which includes excerpts from the deposition of Christina Hamill, a witness at the scene of Mr. Brown's death. (Doc. ##51, 56, Ex. 1.) Defendants seek to exclude Ms. Hamill's testimony because it has not been properly authenticated. In the alternative, Defendants argue that her testimony fails to raise a triable issue of fact on the two claims Plaintiffs cite the deposition in support of - assault and battery, and wrongful death.

A court can only consider admissible evidence in ruling on a summary judgment motion. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002); Fed. R. Civ. P. 56(e). Thus, "unauthenticated documents cannot be considered." *Id.* (citations omitted). "A deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent." *Id.* at 774 (citations omitted). "It is insufficient for a party to submit, without more, an affidavit from her counsel identifying the names of the deponent, the

7

reporter, and the action and stating that the deposition is a 'true and correct copy.' . . . Such an affidavit lacks foundation even if the affiant-counsel were present at the deposition." *Id.* (citations omitted).

Here, the deposition testimony submitted by Plaintiffs does not contain the name of the action, the name of the deponent, or a signed reporter's certification. Moreover, as stated above, it is insufficient that Plaintiffs submitted an affidavit from Mr. Knox. Accordingly, the Court finds that the deposition excerpts are not admissible evidence. However, even if it were to consider Ms. Hamill's testimony, the Court agrees that it fails to raise a triable issue of fact, as discussed below.

**C.    Application to the Case at Bar**

   1.    <u>Plaintiffs' Claims under 42 U.S.C. § 1983</u>

Plaintiffs' first and second causes of action arise under 42 U.S.C. § 1983. The first cause of action seeks to hold Defendants liable under § 1983 for the alleged violation of Plaintiffs' civil rights by unidentified individual defendants. The only defendants named in the complaint, however, are the City and its Police and Fire Chiefs in their official capacities. Despite a discovery period that lasted over eight months, and despite being provided with the names of the individual officers present at the scene in initial disclosures, Plaintiffs never named nor served any individual defendants. (JSU #1.) Further, Plaintiffs concede that there is no respondeat superior liability for violations of civil rights under 42 U.S.C. § 1983. *See, e.g., Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. Dep't. of Social Services*, 436 U.S. 658, 691 (1978). Thus, where a plaintiff does not name an individual officer defendant, the only liability theory available is that the constitutional violation was caused by a municipal custom or policy. *Brown*, 520 U.S. at 404 (plaintiff must demonstrate that City custom or policy was the "moving force" behind the alleged constitutional violation.) Accordingly, summary judgment on Plaintiffs' first cause of action is appropriate.

Plaintiffs' second cause of action alleges that Defendants had an informal policy or custom which allowed officers to use excessive force in the course of a detention, and for paramedics to fail to provide adequate and timely care for prisoners. Local governments are "persons" subject to

8

liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Monell*, 436 U.S. at 690. However, a municipality may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. *Brown*, 520 U.S. at 403. Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injuries that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

A policy giving rise to local government liability cannot be established merely by identifying conduct that is properly attributable to the municipality. "The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. That is, the municipal action must have been taken with the requisite degree of culpability and with a direct causal link to the deprivation of the federal right. *Id.* Proof of random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000); *Davis v. City of Ellenburg*, 869 F.2d 1230, 1233 (9th Cir.1989). "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996).

Here, Plaintiffs allege that the Officers assaulted Mr. Brown until he "was beaten into unconsciousness." (Compl. ¶ 11.) They also allege that the Officers then failed to timely summon medical assistance, and that the paramedics "failed to transport [Mr. Brown] . . . to a hospital or appropriate medical facility in a timely manner." (Compl. ¶ 12.) Plaintiffs argue that Defendants have been "deliberately indifferent to the use of excessive force by police officers and to inadequate care of arrestees by police and medical personnel," resulting in an informal policy or custom "of tolerance for excessive force and inadequate medical care of arrestees." (Opp'n at 4:24-28.) While Plaintiffs provide no evidence in support of these allegations, they cite to *City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989), and argue that the allegations "state a cognizable claim that should withstand dismissal under F.R.Civ.P. 12(b)(6), and present a factual issue that should preclude

9

1   summary judgment under F.R.Civ.P. 56."  (Opp'n at 5:1-14.)

2     As Defendants point out in their reply brief, it appears that Plaintiffs misunderstand their
3   burden.  Defendants do not contend that Plaintiffs allegations are insufficient to state a claim that
4   withstands a motion to dismiss.  Rather, Defendants have moved for summary judgment on grounds
5   that Plaintiffs do not have sufficient evidence to raise a triable issue of fact.  Thus, Plaintiffs must
6   produce "specific evidence, through affidavits or admissible discovery material, to show that [a]
7   dispute exists," and that there is a genuine issue for trial.  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,
8   1409 (9th Cir. 1991); Fed. R. Civ. P. 56(e).

9     Even viewing the facts in a light most favorable to Plaintiffs, and thereby assuming a
10  constitutional violation as alleged, Plaintiffs have only shown an isolated incident.  Without
11  evidence beyond their allegations of this isolated incident, Plaintiffs have failed to meet their burden
12  on summary judgment of showing that there is a widespread policy.  Without more, such as evidence
13  of repeated constitutional violations based on this policy, Plaintiff's argument is tenuous and does
14  not rise to the level of a *Monell* violation.  *See, e.g., Irish v. City of Sacramento*, 2007 WL 570258
15  *9 (N.D. Cal.) ("While a Section 1983 plaintiff may attempt to prove the existence of custom or
16  informal policy with evidence or repeated constitutional violations for which errant municipal
17  officials were not discharged or reprimanded, . . . no such evidence was produced by plaintiff.");
18  *Medora v. City and County of San Francisco*, 2007 WL 2522319 *13 (N.D. Cal.) (plaintiff's proof
19  that officers involved in incident failed to follow departmental policy governing internal reporting
20  and investigation of complaints of excessive force was insufficient to raise triable issue of fact of a
21  "widespread policy" which promoted excessive force and caused plaintiff's particular injury).

22    Because Plaintiffs' only evidence to support their *Monell* claim is their own conclusory
23  allegations, Defendants are entitled to summary judgment on Plaintiffs' second cause of action.

24    2. <u>Plaintiffs' Claim for Assault and Battery</u>

25    Plaintiffs' third cause of action is for assault and battery.  This claim is a survivor claim that
26  belongs to the Estate.  Cal. Civ. Pro. Code § 377.30; *Quiroz v. Seventh Ave Ctr*, 140 Cal. App. 4th
27  1256, 1264 (2006) ("[A] survivor cause of action is not a new cause of action that vests in the heirs

28

on the death of the decedent. It is instead a separate and distinct cause of action which belonged to the decedent before death but, by statute, survives that event."). Defendants argue that the Estate does not have any evidence of recoverable damages. In response, Plaintiffs argue that the damages for this claim are "self-evident." (Opp'n at 6:14.)

To establish a battery claim, Plaintiffs must show that: (1) Defendants intentionally did an act which resulted in a harmful or offensive contact with Mr. Brown's person; (2) Mr. Brown did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to him. *Fluharty v. Fluharty*, 59 Cal. App. 4th 484, 497 (1997) (citations omitted). Under California law, damages in a survivor claim are limited to "loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering or disfigurement." Cal. Civ. Pro. Code § 377.34; *Quiroz*, 140 Cal. App. 4th at 1265.

Here, even assuming that Plaintiffs have established the first two elements of their claim, they fail to establish the third. In response to an interrogatory requesting an itemization of "all damages" claimed by the Estate in this lawsuit, Ms. Justin as successor to the Estate of Andre Maurice Brown responded:

> Damages include pain and suffering for physical injuries, emotional distress, loss of life, loss of future income, and other compensable losses. In addition, damages include punitive amounts for the intentional, malicious and wanton conduct of the defendants sufficient to deter future constitutional violations. Damages calculations have not yet been completed and this answer will be supplemented as information is received.

(Bliss Decl., Exs. D & E, Interrog. No. 1.)

Pursuant to section 377.34, the Estate cannot recover "pain and suffering," nor can it recover damages based on Mr. Brown's "loss of life" or "future income" since damages are limited to those "sustained or incurred before death." *Id.* Thus, the only damages claimed by Plaintiffs that are recoverable are punitive damages. However, public entities are not liable for punitive damages on state law claims. Cal. Gov't Code § 818. Thus, because Plaintiffs have never named any individual

11

defendants, and the City cannot be held liable for punitive damages, Plaintiffs are entitled to summary judgment on this cause of action.

3. <u>Plaintiffs' State Law Claim for Intentional Infliction of Emotional Distress</u>

Plaintiffs' fourth cause of action is for intentional infliction of emotional distress. However, as discussed above, damages in a survivor claim do not include damages for pain and suffering." Cal. Civ. Pro. Code § 377.34; *see also Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1052 (N.D. Cal. 2006) ("The California survivor statute, section 377.34 of the Code of Civil Procedure, bars successors in a lawsuit from recovering damages for a deceased plaintiff's emotional distress."). Accordingly, this claim must also fail.

4. <u>Plaintiffs' State Law Claim for Violation of Section 52.1</u>

Plaintiffs' fifth cause of action is for violation of the Bane Act, California Civil Code section 52.1. Specifically, Plaintiffs allege that Defendants interfered with Mr. Brown's exercise and enjoyment of his civil rights through use of wrongful force and by failing to provide timely and adequate medical assistance. Defendants move for summary judgment on two grounds: (1) that Plaintiffs' government tort claims failed to put them on notice of such a claim; and (2) that Plaintiffs neither allege nor have evidence that Defendants used force to interfere with a separate protected right. Plaintiffs fail to address Defendants' notice argument, but contend that they sufficiently alleged a section 52.1 claim.

As to Defendants' first ground for summary judgment, the Court notes that Plaintiffs' government tort claims do not specifically address section 52.1. The claims state in relevant part:

> This claim is based on the wrongful death of Andre Brown on 11/23/04 as a result of the intentional and negligent conduct of officers of the San Francisco Police Department and emergency medical personnel.
> ***
> Deprivation of liberty, pain and suffering, and wrongful death as a result of excessive force and untimely and inadequate medical attention. Loss of companionship and support.

(JSU ##7-8.)

California law requires that before suing a public entity or public employee, a plaintiff must first present a tort claim to a public entity that specifies the legal and factual basis for his claim

12

against the entity or its employees. Cal. Gov. Code §§ 905, 910, 950.2. "[S]ubmission of a claim to a public entity is a condition precedent to tort action and the failure to present the claim bars the action." *Lutz v. Tri City Hosp.*, 179 Cal. App. 3d 807, 812 (1986). Thus, "[c]ourts have consistently interpreted the Tort Claims Act to bar actions alleging matters not included in the claim filed with the public entity." *Williams v. Braslow*, 179 Cal. App. 3d 762, 769-70 (1986). In federal cases, causes of action arising under California law are subject to this claims filing requirement and the law governing such claims. *Karim-Panahi v. LAPD*, 839 F.2d 621, 627 (9th Cir. 1988); *Ellis v. City of San Diego*, 176 F.3d 1183, 1190 (9th Cir. 1999).

Here, it appears that Plaintiffs' government tort claims did not put Defendants on notice of the section 52.1 claim. However, the Court need not resolve this issue because, even assuming that the government tort claim did put Defendants on notice, the claim itself must fail. Civil Code section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). The essence of a Bane Act claim is that the defendant, by "threats, intimidation or coercion," tried to or did prevent the plaintiff from doing something he or she had the right to do under the law, or to force the plaintiff to do something that he or she was not required to do under the law. *Id.*; *see also Austin V. v. Escondido Unified School Dist.*, 149 Cal. App. 4th 860, 883 (2007).

Plaintiffs argue that this claim should survive summary judgment because the Complaint "specifically alleges that one or more of the Doe defendants 'interfered with the decedent's exercise and enjoyment of his civil rights . . . through the use of wrongful force, including his right to be free from violence and the threat of violence, and by failing to provide timely and adequate medical assistance." (Opp'n at 7:1-5.) This argument must fail because a claim under section 52.1 cannot be predicated on allegations that Defendants used force to interfere with Mr. Brown's right to be free from bodily restraint or harm. *See, e.g., Rios v. City of Fresno*, 2006 WL 3300452 at *20 (E.D. Cal.). Section 52.1 is only applicable when a defendant intends by his or her conduct to interfere with a separate, affirmative right enjoyed by a plaintiff; it does not apply to a plaintiff's allegation of use of excessive force absent a showing that the act was done to interfere with a separate state or

13

federal constitutional right. *Jones*, 17 Cal. 4th at 334. Here, Plaintiffs cannot establish a violation of section 52.1 on the record before the Court as they provide no evidence of a violation of a separate state or federal constitutional right. Defendants are therefore entitled to summary judgment on this claim.

### 5. Plaintiffs' Claim for Wrongful Death

Plaintiffs' sixth cause of action is for wrongful death. Based on the dismissal of Mr. Brown's sisters' individual claims, Plaintiff Val Lajune Brown is the only Plaintiff with standing to bring a wrongful death claim. *See* Cal. Civ. Pro. Code § 377.60; *Quiroz*, 140 Cal. App. 4th at 1263. Ms. Brown alleges that, as a proximate result of Defendants' acts, she has sustained "pecuniary loss resulting from the loss of the society, comfort, attention, services and support of decedent," as well as funeral expenses. (Compl. ¶¶ 46-47.)

The elements of a cause of action for wrongful death are "the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz*, 140 Cal. App. 4th at 1263 (internal citation and quotations omitted). In order to establish the element of causation on a wrongful death claim, a plaintiff must present expert testimony. *Kennedy v. Southern California Edison Co.*, 268 F.3d 763, 768 (9th Cir. 2001); *Cottle v. Superior Court*, 3 Cal. App. 4th 1367, 1384 (1992) ("The law is well settled that in a personal injury action causation must *be proven within a reasonable medical probability based upon competent expert testimony*.") (emphasis in original); *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal. App. 3d 396, 402 (1985) (same).

Here, Plaintiffs argue that factual issues concerning Mr. Brown's cause of death are in dispute, thereby precluding summary judgment. Plaintiffs cite to the deposition testimony of Christina Hamill, who testified that Mr. Brown was alive when she first observed him being detained by the officers, and that he ceased moving during the arrest. (Knox Decl., Ex. 1 at 66:4-10.) Ms. Hamill also testified that the force used to subdue Mr. Brown was excessive, (Knox Decl., Ex. 1 at 112:18-25; 113:1-2), and that the delay in medical response was unreasonably slow. (Knox Decl., Ex. 1 at 113:21-25; 114:1-13.) However, Ms. Hamill is not a medical expert and cannot

14

testify as to the cause of Mr. Brown's death. *See, e.g., Kennedy*, 268 F.3d at 768; *Cottle*, 3 Cal. App. 4th at 1384; *Jones*, 163 Cal. App. 3d at 402. Moreover, Ms. Hamill's testimony fails to create a triable issue of fact on the issue of causation. At most, her testimony establishes that Mr. Brown was alive at the time of the attempted arrest, that an officer used a baton during the incident, and that, in her opinion, it took medical personnel an "unreasonably slow" amount of time to arrive. Ms. Hamill did not testify that baton strikes were the cause of death and, even if she did, it would not be expert testimony.

Although not clearly articulated, it appears that Plaintiffs also claim that Mr. Brown died as a result of paramedics failing to timely and adequately provide medical care. In such cases, however, California law provides qualified immunity to emergency personnel for any injury caused while they are acting within the course and scope of their employment to provide emergency services. Cal. Health & Safety Code § 1799.107. It is undisputed that the paramedics were emergency personnel rendering medical aid. (JSU #4), thereby bringing them within the immunity protections of section 1799.107. Thus, Plaintiffs must plead and prove that the paramedics were acting in "bad faith" or were "grossly negligent." Cal. Health & Safety Code § 1799.107(b)-(c) ("For purposes of this section, it shall be presumed that the action taken when providing emergency services was performed in good faith and without gross negligence. This presumption shall be one affecting the burden of proof.") In order to establish gross negligence, Plaintiffs would have to prove "the want of even scant care or an extreme departure from the ordinary standard of conduct." *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1185-86 (2003) (citations omitted). Having presented no such evidence, Plaintiffs have failed to create a triable issue of fact as to Plaintiff Val Lajune Brown's claim for wrongful death, and Defendants are entitled to summary judgment on Plaintiffs' sixth cause of action.[3]

---

[3] Plaintiffs also attempt to distinguish *Kennedy* on grounds that it involved a jury trial and not a motion for summary judgment. This distinction is without legal consequence, however, because summary judgment must be granted if Defendants "show that the nonmoving party does not have enough evidence of an essential element [of a claim] to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

///

///

### 6. Plaintiffs' Claim for Negligent Selection, Training, Retention, Supervision, Investigation, and Discipline

Plaintiffs' seventh cause of action is for negligent selection, training, retention, supervision, investigation, and discipline. Specifically, Plaintiffs allege that Defendants breached their duty of care to citizens in their failure to adequately train officers and paramedics in the proper means of the use of force and care of prisoners in the course of their employment. Defendants argue that this claim was not raised in Plaintiffs' government tort claim. In the alternative, Defendants argue that it should be dismissed as a matter of law because the City is immune from liability.

First, the Court finds that Plaintiffs failed to raise this cause of action in their government tort claim. As stated above, California law requires that before suing a public entity or public employee, a plaintiff must first present a tort claim to a public entity that specifies the legal and factual basis for his claim against the entity or its employees. Although Plaintiffs stated claims for negligent conduct, those claims were directed at the individual officers and paramedics. (JSU ## 7, 8.) There are no allegations in their tort claims that would put Defendants on notice that Plaintiffs were bringing a claim for negligent training, retention, supervision, and investigation. *See, e.g., Donahue v. State of California,* 178 Cal. App. 3d 795, 804 (1986) (upholding judgment on the pleadings for lack of notice where a driver sued department of motor vehicles for negligence in failure to instruct, direct and control, but tort claim filed with department alleged only negligence in permitting an uninsured driver to take a driving test); *see also Fall River Joint Unified School Dist. v. Superior Court*, 206 Cal. App. 3d 431, 434-35 (1988) (dismissing claim for negligent supervision where tort claim did not provide notice of such claim).

Even if the Court were to find that Defendants had notice of this claim, Defendants are entitled to immunity. California Government Code section 815 limits the liability of public entities to statutory claims. Cal. Gov't Code § 815(a) ("Except as otherwise provided by statute, [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public

16

entity or a public employee...."). Here, Plaintiffs cite to no statutory basis for a claim against the City. Instead, they argue that their claim is not directly against the City, but states a basis for liability under the doctrine of respondeat superior based on the conduct of Defendants San Francisco Police Chief Heather Fong, San Francisco Fire Chief Joanne Hayes-White, and their subordinates.

California Government Code section 815.2(a) "makes a public entity vicariously liable for its employee's negligent acts or omission within the scope of employment." *Eastburn.*, 31 Cal. 4th at 1184. In *Eastburn*, the California Supreme Court explained that section 815 applies to direct tort liability of public entities, *id.* at 1180, while section 815.2(a) "makes a public entity vicariously liable for its employee's negligent acts or omission within the scope of employment." *Id.* at 1180, 1184. "Vicarious liability 'means that the act or omission of one person ... is imputed by operation of law to another[.]'" *Srithong v. Total Investment Co.*, 23 Cal. App. 4th 721, 726 (1994) (quoting *Far West Financial Corp. v. Defendant & S Co.*, 46 Cal.3d 796, 819 (1988)). Thus, Plaintiffs' allegations, which focus on the negligent hiring and supervision by the City, are properly treated as direct liability claims. *See, e.g., Walker v. County of Santa Clara*, 2005 WL 2437037 *9 (N.D. Cal.) (rejecting plaintiff's argument that the county could be "vicariously liable" for its employees negligent hiring, training, and supervision pursuant to California Government Code section 815.2(a); *see also Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004) (negligent hiring and supervision of police claim treated as direct liability claim); *Eastburn*, 31 Cal. 4th at 1185 (negligent staffing and training claim against 911 company analyzed as direct liability claim). Because Plaintiffs have not identified any statutory basis for liability against the City, summary judgment is appropriate as to this claim.

### 7. Plaintiffs' Claim for Negligent Infliction of Emotional Distress

Plaintiffs' eighth cause of action[4] is for intentional infliction of emotional distress. Defendants argue that this claim must fail because Plaintiffs failed to claim negligent infliction of emotional distress in their government tort claims. However, in California, there is no tort for the

---

[4] Plaintiffs' Complaint lists this as the "Ninth Cause of Action." However, as there is no cause of action in the complaint labeled "Eighth," this claim is properly next in sequence.

17

negligent infliction of emotional distress; instead, the regular rules of negligence apply. *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984-85 (1993). Plaintiffs clearly stated negligence in their tort claims: "This claim is based on the . . . **negligent** conduct of officers of the San Francisco Police Department and emergency medical personnel." (JSU #7, emphasis added.) Regardless, even if Plaintiffs could establish negligence, as discussed above, damages in a survivor claim are limited to "loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering or disfigurement." Cal. Civ. Pro. Code § 377.34; *Quiroz*, 140 Cal. App. 4th at 1264-65. Accordingly, this claim must fail.

## IV.   CONCLUSION

Based on this analysis, the Court GRANTS Defendants' motion for summary judgment on all claims.

**IT IS SO ORDERED.**

Dated: May 5, 2008

MARIA-ELENA JAMES
United States Magistrate Judge